CITY OF PELLY ET AL V. HARRIS COUNTY WATER CONTROL
AND IMPROVEMENT DISTRICT NO. 7 ET AL.

No. A-962. Decided November 27, 1946.
Rehearing overruled January 15, 1947.
(198 S. W., 2d Series, 450.)

*Tom Saunders*, of Houston, *J. E. Flowers*, City Attorney, of Goose Creek, and *Shannon L. Morris*, City Attorney of Pelly, for petitioners.

The Court of Civil Appeals erred in holding that a home rule city cannot by ordinance extend its boundaries so as to include within its limits fresh water supply districts and water control and improvement districts. City of Houston v. City of West University Place, 142 Texas 190, 176 S. W. (2d) 928; Wichita Falls v. Bowen, 143 Texas 45, 182 S. W. (2d) 695; Allen v. City of Austin, 116 S. W. (2d) 468.

*A. T. Carleton, Vinson, Elkins, Weems & Francis* and *Victor W. Bouldin*, all of Houston, for respondents.

The judgments of the lower courts are correct because the proposed annexation ordinance and the charter provision which purports to authorize it are inconsistent with the methods of annexation provided in Article 1182a, which article provides the sole method for the annexation by a city of territory within a water control and improvement district under existing law. State ex rel Wilkinson v. Self, 191 S. W. (2d) 756; Hunt v. Atkinson, 12 S. W. (2d) 142.

MR. JUSTICE BREWSTER delivered the opinion of the Court.

This in an appeal from a permanent injunction granted by the district court of Harris County in each of two consolidated suits, the trial court judgment having been affirmed by the court of civil appeals. 195 S. W. (2d) 241.

In one suit, Harris County Water Control & Improvement District No. 7, Tri-City Fresh Water Supply District No. 2, and Harris County Fresh Water Supply District No. 10, respondents, who are hereinafter referred to as Baytown District, Leger District and Busch Terrace District, respectively, joined by their directors, certain taxpayers and a holder of bonds issued by Baytown District, sued the City of Pelly and its mayor and commissioners, petitioners, to enjoin the City of Pelly from annexing parts of Baytown and Leger and all of Busch Terrace.

In the other suit the same plaintiffs sued the City of Goose Creek and its officers, petitioners, to enjoin a threatened annexation of the same territory.

Baytown District is a water control and improvement district

organized under Art. XVI, Sec. 59, of the Constitution of Texas, and Art. 7880-1 to 147z, Vernon's Annotated Civil Statutes. It owns and operates a waterworks system, sanitary sewer system, fire department and garbage collection facilities, and it furnishes those services to the residents of its territory. It has outstanding and unpaid $207,000 waterworks and sewer system revenue bonds which are secured by a first lien on the net revenues realized from the operation of its waterworks and sewer system.

The Leger and Busch Terrace districts are water conservation districts organized under Art. XVI, Sec. 59, of the Constitution of Texas, and Arts. 7881 to 7959a, Vernon's Annotated Civil Statutes.

Leger District owns and operates a waterworks system, furnishing fresh water to the residents of the district. Under a lease from the United States Government, owner, it also operates a sanitary sewer system. It has unpaid and outstanding waterworks system bonds in the amount of $39,000.00, which are payable from ad valorem taxes on all taxable property within the district.

Busch Terrace District owns and operates a waterworks system to provide its residents with fresh water. It has unpaid and outstanding waterworks system bonds totaling $11,000.00; and an ad valorem tax is being levied and collected each year on all taxable property within the district to retire them. Also any surplus income from the operation of its waterworks system is pledged to the payment of these bonds.

On December 8, 1945, the City of Pelly held an election to determine whether it would adopt a Home-Rule Charter, under Art. XI, Sec. 5, of the Constitution of Texas, and Arts. 1165-1169, R. S., 1925. Its city council met at 7 p. m., when the polls closed on that day, canvassed the returns and declared that the charter had been duly adopted.

The adopted charter carried this provision: "Extension of Boundaries: the City Commission shall have power by ordinance to fix the boundary limits of the City of Pelly; and to provide for the alteration and extension of said boundary limits and the annexation of additional territory lying adjacent to the City, with or without the consent of the territory and inhabitants annexed. Upon the introduction of any such ordinance in the

City Commission, it shall be published in the form in which it may be finally passed, in a daily newspaper published in the City of Pelly, at least one time, and said ordinance shall not thereafter be finally acted upon until at least thirty days have elapsed after the first publication thereof; and upon the final passage of any such ordinance, the boundary limits of the City shall thereafter be fixed in such ordinance and when any additional territory has been so annexed, the same shall be a part of the City of Pelly, and the property situated therein shall bear its pro rata part of the taxes levied by the City, and the inhabitants thereof shall be entitled to all the rights and privileges of all the citizens, and shall be bound by the acts, ordinances, resolutions and regulations of the City."

Immediately after declaring the charter adopted and at the same meeting, the Pelly city council resolved itself into the City Commission of the City of Pelly and passed on first reading an ordinance annexing to the City of Pelly all of Busch Terrace District, all of Baytown District except a small tract in its southwest corner and all of Leger District except a few acres along its south boundary line. In that action the city commission was acting under the provisions of the charter above quoted.

The parties stipulated that the City of Pelly had "not called or held an election of any kind for the purpose of annexing the territory within said Baytown District, the Leger District or the Busch Terrace District or for the purpose of assuming the outstanding bonds and indebtedness of said Districts or for the levy of taxes to pay said bonds and indebtedness."

It was to stop further annexation procedure by the City of Pelly that respondents brought this suit against it.

Respondents urge several propositions to support their claim that they cannot be annexed as attempted by the City of Pelly.

■ They say that since the territory sought to be annexed has a population in excess of 5,000 it is vested with the powers of home rule and petitioners are therefore without authority to annex it, under the holding in City of Houston v. City of Magnolia Park, 115 Texas, 101, 276 S. W. 685. In that case Magnolia Park was already functioning as a municipal corporation under the general laws of this state providing for the incorporation of cities and towns when the City of Houston attempted to annex it. So, although Magnolia Park had not availed itself

of its right to operate under a home-rule charter, it was nevertheless a city with the legal right to determine for itself what kind of charter it should live under. Under those circumstances, this court held that one city cannot destroy the self-government of another city.

■ Citing the holding in City of Galena Park v. City of Houston (Civ. App.), 133 S. W. (2d) 162 (er. ref.), that two political subdivisions cannot exist at the same time over the same territory for the same purposes, respondents urge that the rule there announced must be applied although the first political subdivision may be established for very limited purposes. Concretely, they insist that since Baytown District was established as a water control and improvement district and Leger and Busch Terrace as water conservation districts, the City of Pelly cannot extend its jurisdiction over any of their territory because, as a municipal corporation, it may serve the same purposes as they were established to serve. To recognize that proposition in the jurisprudence of this state would mean that cities, which possess broad statutory police powers necessary to promote the public health and general welfare, could be wholly and permanently fenced in by governmental agencies such as respondents which are invested with very limited corporate functions and which have been said to be "low down in the scale or grade of corporate existence." Tri-City Fresh Water Supply Dist. No. 2 v. Mann, 135 Texas, 280, 142 S. W. (2d) 945. We do not think it was ever intended that the growth of a municipal corporation could be thwarted in that fashion. That the legislature contemplated that a municipal corporation and a water control and improvement district such as respondent Baytown, may embrace the same territory is clearly indicated by the language of Art. 7880-135, R. S., 1925, paragraph A, as follows: "The area included in any town, city or municipal corporation be organized into and constituted a water control and improvement district * * *." And the same is indicated as to water conservation districts such as respondents Busch Terrace and Leger by the last sentence of Art. 7881, R. S., 1925, "Such districts may or may not include cities and towns." And there are other statutes to the same effect, e.g., Arts. 7662, 7808, 8097 and 8198, Vernon's Annotated Civil Statutes. Art. 7881, supra, was quoted in Ptacek v. Hofheinz (Civ. App.), 128 S. W. (2d) 872 (er. ref.), in support of the holding in that case that there is nothing in the powers of a municipal corporation "to impinge or overlap" upon the express purposes of water conservation districts, as declared in the constitutional provisions relating to both. See

City of Fort Worth v. Zane-Cetti, 278 S. W., 183; Simmons et al v. Lightfoot, 105 Texas, 212, 146 S. W., 871.

Respondents further contend that their territory cannot be annexed simply by charter provision because that method is inconsistent with the procedure provided by Art. 1182a, Vernon's Annotated Civil Statutes, which is as follows:

"Sec. 1. Whenever the City Commission of any City within this State, acting under and by virtue of any Charter adopted under Home Rule Amendment Article 11, Section 5, of the Constitution of this State, shall initiate or order an election for the extension of the territorial limits of said city, to be submitted to the legally qualified property tax paying voters residing within the territorial limits of said city, to determine whether or not the adjacent territory desired to be annexed shall be included within the territorial limits of said city, said City Commissioners shall at the same time order an election to be held at some convenient place within said city limits, so that the legally qualified property tax paying voters residing in the territory contiguous to said city and proposed to be annexed, may appear and cast their vote for the purpose of determining whether a majority of the legally qualified property tax paying voters residing in said territory proposed to be annexed, favor the annexation of said territory proposed to be annexed."

■ Whether that statute was designed to set up an exclusive method for a home-rule city to extend its territorial limits was settled in City of Fort Worth v. State ex rel. Ridglea Village (Civ. App.), 186 S. W. (2d) 323 (er. ref. want of merit). In that case the City of Fort Worth annexed an unincorporated contiguous area, known as Ridglea Village, by charter amendment. Ridglea Village contested the annexation, contending that it could be annexed only under the procedure provided in Art. 1182a, supra. In overruling that contention, the court said: "Article 1182a cannot be accepted as evidence of a purpose on the part of the Legislature to require the consent of the inhabitants of the territory to be annexed in all cases of annexation, because it expressly continues in force the right in certain cases to annex territory by ordinance of the city. And the same Legislature, at a called session later held, expressly provided that certain cities might annex territory by the charter amendment method upon vote of the qualified voters of the city. Article 1265, Vernon's Ann. Civ. St., Acts 1929, 41st Leg., 2nd C. S., p. 131, Ch. 63. Clearly there is no general public policy in Texas, either by legislative enactment or by judicial decision, to the effect

that territory cannot be annexed without the consent of the inhabitants of such territory. There is nothing in Article 1182a to indicate an intent on the part of the Legislature to establish a new general policy in this respect. When the caption and the emergency clause, as well as the second and third sections, of Article 1182a are examined, it seems reasonable to believe that the chief purpose of the act is to provide a method of equalizing taxes in cases where a city annexes territory lying within a water improvement district, or a district of like nature. When we consider the entire act, together with the caption and the emergency clause, we cannot believe that the Legislature intended by its enactment to abolish the established method of annexing territory by charter amendment. In other words, Article 1182a appears to us to be cumulative rather than exclusive in its operation."

■ Respondents insist that Pelly's annexation ordinance is void because it would impair their contractual obligations with the holders of Baytown's revenue bonds and of Leger's and Busch Terrace's tax bonds. The answer to that proposition is that the City of Pelly annexed the territory involved subject to whatever powers the law then gave respondents over that territory and subject to any valid obligations then existing against respondents relating to that territory. Although it was held in Kuhlmann et al v. Drainage Dist. No. 12 (Civ. App.), 51 S. W. (2d) 784 (er. ref.), that the annexing city is not bound to assume any outstanding bonded indebtedness of the annexed district, the holding is based on the fact that the annexed district was still free to operate as it had before annexation so that its ability to meet its obligations was in no way impaired.

■ Kuhlmann et al v. Drainage Dist. No. 12, supra, also forecloses respondents' counterpoint that Pelly's proposed annexation is void because it will subject private property within the annexed districts to taxation both by the city and the respective districts for purposes and services which can be rendered by only one of them. It is there said: "Since the City of Houston and Harris County Drainage District No. 12 are separate entities created under separate provisions of the Constitution of the State of Texas, to each of which has been delegated the power to assess and collect taxes for the purpose of accomplishing the several functions for which they were organized, the fact that a part of the property included in the territorial limits of the one is also included in the other does not subject such property to double taxation nor contravene the Constitutional rule that taxes must be equal and uniform."

The two propositions last considered, as well as much of respondents' argument in support of other contentions, are based on the assumption that the City of Pelly will attempt to take over the annexed territory in utter disregard for respondents' constitutional and statutory powers and obligations and that, therefore, the annexation is void because both the city and the district cannot function harmoniously in the "common orbit'" In the first place, we are not justified in assuming that petitioners will make any such attempt. Rather we must assume that Pelly will proceed amicably in an effort to adjust any conflicts by mutual agreement. But if it should not make that effort or if accord cannot be reached by it and the district concerned, then it will become the province and duty of the courts to adjudicate the differences. That is clearly the effect of Harris County Drainage Dist. No. 12 v. City of Houston et al, 35 S. W. (2d) 118, a Commission of Appeals opinion which had the express approval of this court. See, also, City of Breckenridge v. Stephens County, 120 Texas, 318, 40 S. W. (2d) 43.

This appeal presents no controversy between the City of Pelly and the City of Goose Creek. Respondents urge the same objections to the latter's alleged threatened annexation as are urged against the City of Pelly, so what we have said applies to both cases.

Both judgments below are reversed and judgment is here rendered for petitioners.

Opinion delivered November 27, 1946.

Rehearing overruled January 15, 1947.