## CITY OF BROWNSVILLE v. WHEELER et al.

### No. 11889.

Court of Civil Appeals of Texas. San Antonio.

Nov. 10, 1948.

Rehearing Denied Nov. 24, 1948.

Jack Weich and R. A. Hightower, both of Brownsville, for appellant.

E. T. Yates, of Brownsville, for appellees.

MURRAY, Justice.

This suit was instituted by the City of Brownsville, a home rule city under Art. XI, § 5, Constitution of Texas, Vernon's Ann.St., against Cameron County Water Control and Improvement District No. 7, organized under Art. XVI, § 59, Constitution of Texas, and against several individuals as representatives of a larger class of persons, seeking under the Uniform Declaratory Judgment Act, Art. 2524—1, Vernon's Ann.Civ.Stats., to obtain a court decree holding Sec. 3 of Art. 1182a, Vernon's Ann.Civ.Stats., and City Ordinance No. 218 and the election proceedings and requirements thereunder, to be invalid. And, in the alternative, the city prayed that in the event the court should hold Sec. 3 of Art. 1182a to be valid, then that the court declare the rights and other legal relations between the parties in certain specified particulars.

The water district answered taking the position that it was immaterial to it whether the court held Sec. 3 of Art. 1182a void or not, and also whether the court upheld ordinance 218 and the election proceedings and the requirements thereunder.

The individual defendants answered contending that Sec. 3 of Art. 1182a, ordinance 218, and the election proceedings had thereunder, were all valid and further prayed for a declaratory judgment in certain specified particulars.

The case was submitted to the court without the intervention of a jury upon an agreed statement of facts and resulted in judgment upholding the validity of Sec. 3 of Art. 1182a, city ordinance No. 218 and the election proceedings and the requirements thereunder, and also rendering a declaratory judgment upon the particulars specified. From which judgment the City of Brownsville has prosecuted this appeal.

Appellant first contends that the trial court erred in holding Sec. 3 of Art. 1182a, city ordinance 218, and the election proceedings and the requirements thereunder, constitutional, because such violate Art. 1, § 17 of the Constitution of Texas, in that it confers on the property owners in the annexed territory irrevocable and uncontrollable grants of special privilege and immunities, to-wit: (1) They are thereby relieved from paying their bond taxes to the water district, (2) they are given free of charge all the benefits and privileges accruing from property ownership in a water control and improvement district, and (3) they are given two valuable and distinct benefits for the price of one, i. e., they have all their municipal rights and privileges for which they pay the prevailing city taxes, and they have the water district rights and benefits for which they pay nothing.

In November, 1930, the City of Brownsville, by the enactment of ordinance No. 218, called an election under the provisions of Art. 1182a, Vernon's Ann.Civ.Stats., for the purpose of annexing about 268 acres of land adjacent to the city and lying in Water District No. 7. In December, 1930, the election was held and the annexation was favored both by the legally qualified property tax-paying voters living in the city and those living in the territory to be annexed, and on January 9, 1931, the City Commission passed a resolution declaring the result of the election and annexing the territory. The city has since that date exercised municipal powers and func-

tions over the territory and it has continuously been treated by the city as a part of the City of Brownsville. From 1931, and each year thereafter, the City of Brownsville has calculated, levied and assessed ad valorem taxes for city purposes against all property within the annexed territory subject to taxation, at the same rate and on an equal basis with all other property within the city.

After such annexation the city again annexed such lands under its charter amendment provisions.

The Water District has continued to exercise the powers and functions of a water control and improvement district over the annexed territory. For the year 1931, and for each year thereafter, the Water District has calculated, levied and assessed ad valorem taxes and flat rate assessments for water district purposes against all property within said territory subject to such taxation and flat rate at the same rate and on an equal basis with all other property within said water district.

At the time of the annexation, the City of Brownsville had a bonded indebtedness of some $2,000,000.00 and the Water District had a bonded indebtedness of some $175,000.00.

The City of Brownsville operated under the provisions of Sec. 3 of Art. 1182a for some six years after such annexation. The system used was for the water district to designate a city employee to accept payment of its taxes. The city would collect the city tax, turn over to such agent the amount of the water district tax and retain the difference. The taxpayer was given receipts both for his city tax and his water district tax. After following this system for some six years the city discontinued the practice and would collect and retain the city tax without paying the water district tax. Some of the land owners in the annexed territory paid both taxes and some have not. The city here gives as its reasons for not paying the water district tax that Sec. 3 of Art. 1182a is unconstitutional and void as being in violation of many provisions of our State Constitution.

Sec. 3, Art. 1182a, reads in part as follows:

"If, at any election to be held under the provisions hereof, a majority of the legally qualified tax paying voters residing within the territorial limits of such city, and those residing within the territorial limits proposed to be annexed, shall each vote in favor of the annexation of such additional territory, said city shall thereby assume all of said bonded indebtedness and flat rates on the territory thus annexed and due such Irrigation District, Water Improvement District or Water Control and Improvement District, or either of them, and shall from thence forth out of the taxes collected on the territory thus annexed pay to said Irrigation District, Water Improvement District or Water Control and Improvement District, said bonded indebtedness and flat rates, owing to such district, or either of them, as same become due and payable, and no city thus annexing such territory shall be entitled to collect any taxes due it from the property owners within the territory annexed until said City shall pay such bonded indebtedness and flat rates, for the current year same become due and payable, and present to said property owner a receipt showing that said City has paid the same."

It is contended by appellees that Sec. 3 is valid because it is a tax-equalization statute. In support of this contention they cite City of Fort Worth v. State, Tex. Civ.App., 186 S.W.2d 323, and City of Houston v. Tod, Tex.Civ.App., 258 S.W. 839. The Fort Worth case simply holds, insofar as it affects the questions here raised, that the method of annexing territory by a home rule city provided for in Art. 1182a is not exclusive, but cumulative of annexation by charter amendment. In that opinion the court did say obiter dictum [186 S.W.2d 327]:

"When the caption and the emergency clause, as well as the second and third sections, of Article 1182a are examined, it seems reasonable to believe that the chief purpose of the act is to provide a method of equalizing taxes in cases where a city annexes territory lying within a water improvement district, or a district of like na-

ture. When we consider the entire act, together with the caption and the emergency clause, we cannot believe that the Legislature intended by its enactment to abolish the established method of annexing territory by charter amendment."

We will discuss this statement later. In the Houston case the City had extended its boundaries for school purposes and had taken a part of another school district, and the court held that an equalization of bonded indebtedness was necessary, but did not have to be made simultaneously with the annexation of the territory. We think this case is not in point, because it is quite a different matter to take part of one school district away from a district and give it to another district, and a city merely extending its boundaries to include territory already part of a water district, where no attempt is made to take such territory out of the water district, but such property only becoming a part of both municipalities. In other words, both municipalities simply occupy the "common orbit."

This matter is discussed in City of Pelly v. Harris County Water Control & Improvement Dist. No. 7, 145 Tex. 443, 198 S.W.2d 450, 453, in the following language:

"That the legislature contemplated that a municipal corporation and a water control and improvement district such as respondent Baytown, may embrace the same territory is clearly indicated by the language of art. 7880—135, R.S.1925, paragraph A, as follows: 'The area included in any town, city or municipal corporation be organized into and constituted a water control and improvement district * * *.' And the same is indicated as to water conservation districts such as respondents Busch Terrace and Leger by the last sentence of art. 7881, R.S.1925, 'Such districts may or may not include cities and towns.' And there are other statutes to the same effect, e. g., arts. 7662, 7808, 8097 and 8198, Vernon's Annotated Civil Statutes. Art. 7881, supra, was quoted in Ptacek v. Hofheinz, Tex.Civ.App., 128 S.W.2d 872, er. ref., in support of the holding in that case that there is nothing in the powers of a municipal corporation 'to impinge or overlap' upon the express purposes of water conservation districts, as declared in the constitutional provisions relating to both. See City of Fort Worth v. Zane-Cetti, Tex.Com.App., 278 S.W. 183; Simmons et al. v. Lightfoot, 105 Tex. 212, 146 S.W. 871. * * *

"Respondents insist that Pelly's annexation ordinance is void because it would impair their contractual obligations with the holders of Baytown's revenue bonds and of Leger's and Busch Terrace's tax bonds. The answer to that proposition is that the City of Pelly annexed the territory involved subject to whatever powers the law then gave respondents over that territory and subject to any valid obligations then existing against respondents relating to that territory. Although it was held in Kuhlmann et al. v. Drainage Dist. No. 12, Tex.Civ.App., 51 S.W.2d 784, 788, er. ref., that the annexing city is not bound to assume any outstanding bonded indebtedness of the annexed district, the holding is based on the fact that the annexed district was still free to operate as it had before annexation so that its ability to meet its obligations was in no way impaired.

"Kuhlmann et al. v. Drainage Dist. No. 12, supra, also forecloses respondents' counterpoint that Pelly's proposed annexation is void because it will subject private property within the annexed districts to taxation both by the city and the respective districts for purposes and services which can be rendered by only one of them. It is there said: 'Since the City of Houston and Harris County Drainage District No. 12 are separate entities created under separate provisions of the Constitution of the State of Texas, to each of which has been delegated the power to assess and collect taxes for the purpose of accomplishing the several functions for which they were organized, the fact that a part of the property included in the territorial limits of the one is also included in the other does not subject such property to double taxation or contravene the Constitutional rule that taxes must be equal and uniform.'"

In Kuhlmann v. Drainage Dist. No. 12 of Harris County, Tex.Civ.App., 51 S.W.2d 784, 788, it is said:

"In so far as appellants' suit against the city of Houston is concerned, we think the trial court correctly held that appellants' claim that the levy of taxes by the city upon their property for all city purposes, including city drainage, was the levy of taxes upon this property by the drainage district of double taxation, and a violation of the provision that taxation should be equal and uniform, cannot be sustained.

"The following counter proposition presented by the appellee city of Houston is, we think, a correct statement of law upon this question and is fully sustained by the authorities cited in its support: 'Since the City of Houston and Harris County Drainage District No. 12 are separate entities created under separate provisions of the Constitution of the State of Texas, to each of which has been delegated the power to assess and collect taxes for the purpose of accomplishing the several functions for which they were organized, the fact that a part of the property included in the territorial limits of the one is also included in the other does not subject such property to double taxation nor contravene the Constitutional rule that taxes must be equal and uniform, Const. art. 8, and there is, therefore, no duty upon the City to assume any part of the bonded debt of the Drainage District nor make any adjustment of taxes for appellants. Constitution of Texas, article 11, § 5; article 7, § 3; article 3, § 52; article 8097, Texas Revised Civil Statutes, 1925; Robertson v. Key, Tex.Civ. App., 240 S.W. 1013; Holt v. State, Tex. Civ.App., 176 S.W. 743; Simmons v. Light-foot, 105 Tex. 212, 146 S.W. 871; Moore v. Commissioners' Court of Bell County, Tex. Civ.App., 175 S.W. 849; Harris County Drainage District No. 12 v. City of Houston, Tex.Com.App., 35 S.W.2d 118.'"

If it be true that the levy of taxes by the City upon the annexed territory for all city purposes, including city drainage, and the levy by the drainage district of taxes for its purposes upon this same territory was not double taxation and a violation of the provisions of the Constitution, Sec. 1, Art. 8, that taxation should be equal and uniform, then for the City of Brownsville to assume all of the Water District taxes, including flat rate on the annexed territory must violate that provision. The annexed territory enjoys the privilege of being in the water district without the payment of the taxes assessed against other property in the water district, or it enjoys being in the City and only pays the difference between the city tax and the water district tax, or in the event the water district tax exceeds the city tax then it would bear no city tax and have the privilege of the City paying a part of its water tax. See: Fidelity Bldg. and Loan Ass'n v. Thompson, Tex.Com.App., 51 S.W.2d 578.

We thus have taxation which is not equal and uniform under Sec. 1 of Art. 8 of the Texas Constitution, or the effect of Sec. 3 of Art. 1182a, supra, is to make a grant of special privilege and immunities to the property owners owning property in the annexed territory in violation of Sec. 17, Art. 1, State Constitution.

We are of the opinion that Sec. 3 of Art. 1182a cannot be held to be valid on the theory that it is a tax-equalizing statute when it has the effect to free the annexed territory from all water district taxes while such territory remains a part of the water district and is entitled to any and all benefits that are enjoyed by other territory lying within the water district. We believe that there were no tax adjustments to be made under the facts of this case, but if it be true that some adjustments should be made, as was suggested by the Supreme Court in City of Pelly v. Harris County Water Control and Improvement Dist. No. 7, 145 Tex. 443, 198 S.W.2d 450, it cannot be one that entirely frees the annexed territory from all taxes while such property remains a part of the water district.

It occurs to us that Sec. 3 of Art. 1182a provides a penalty or a bonus which must be paid by a city annexing a portion of a water district rather than a tax equalization.

The disposition we have made of this case makes it unnecessary to pass upon appellant's and appellees' request for a declaratory judgment on other specified matters.

It is true that one municipality cannot take, damage or destroy the property of another municipality, except through due

process of law and making adequate compensation, but here the City has not taken any property belonging to the Water District, the annexed territory is still in the water district, subject to the same taxation by the Water District as it was before it was annexed by the City.

It follows, from what we have said, that the judgment of the trial court must be reversed, wherein it held Sec. 3, Art. 1182a, and the proceedings had thereunder, to be valid and to have the effect of casting upon the territory originally within the City limits of Brownsville the burden of paying the water district taxes assessed against the annexed territory, and we here declare said Sec. 3, Art. 1182a, supra, to be invalid and in conflict with the Constitution for the reasons above given.

Reversed and rendered.